1

**DOWD BENNETT LLP**
Matthew E. Johnson (*pro hac vice*)

2

Kimberly Berve (*pro hac vice*)
mjohnson@dowdbennett.com

3

kberve@dowdbennett.com
1775 Sherman St., Suite 2700

4

Denver, CO 80203
Telephone:    (303) 353-4361

5

Facsimile:    (314) 863-2111

6

*Attorneys for Plaintiffs Circle K*

7

*Procurement and Brand Ltd. and*
*Circle K Stores Inc.*

8

9

10

**IN THE UNITED STATES DISTRICT COURT**

11

**FOR THE DISTRICT OF ARIZONA**

12

13

| CIRCLE K PROCUREMENT AND BRANDS LTD. and CIRCLE K STORES INC., | No. |
|---|---|

14

15

16

| Plaintiff. | **COMPLAINT** |
|---|---|

17

v.

18

19

GOLI NUTRITION INC.,

20

Defendant.

21

22

23

Plaintiffs Circle K Procurement and Brands Ltd. and Circle K Stores Inc. state

24

the following Complaint against Defendant Goli Nutrition Inc.:

25

26

27

28

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Circle K Procurement and Brands Limited ("CK Brands") is an international company with its headquarters located in Dublin, Ireland.

2.      Plaintiff Circle K Stores Inc. ("CK Stores") is a United States chain of convenience stores with its principal place of business in Tempe, Arizona.

3.      Defendant Goli Nutrition Inc. ("Goli") is an international nutrition company with its headquarters located in Quebec, Canada, that markets and sells daily supplement products within the United States, including in Arizona.

4.      This Court has personal jurisdiction over Goli under the Constitution of the United States because (i) Goli sells its daily supplements to citizens of Arizona at dozens or hundreds of retail stores in Arizona, including at CK Stores' retail gas stations, and the claims underlying this Complaint relate to and arise out of Goli's contacts with this State, among others; (ii) Goli consented to jurisdiction in this District under the Parties' operable contract; and (iii) Goli has sufficient minimum contacts with this State such that this Court's exercise of personal jurisdiction over Goli comports with traditional due process notions of fair play and substantial justice.

5.      The Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332(a)(2); here, the amount in controversy exceeds $75,000, and this civil suit is between a citizen of a State and a citizen of a foreign state because CK Stores is a citizen of Arizona, and Goli is a citizen of Canada.

6.      Venue is proper in this Court under the operable contract between the Parties, which consents to venue in this District.  Venue is also proper in this Court

under 28 U.S.C § 1391(b) because Goli is subject to the Court's personal jurisdiction in this action.

### **GENERAL ALLEGATIONS**

7.      Plaintiffs restate, re-allege, reaffirm, and incorporate all preceding paragraphs as if fully contained herein.

8.      On January 1, 2022, the Parties entered two contracts that give rise to Plaintiffs' claims in this lawsuit.

9.      **First**, the Parties entered a U.S. National Supplier and Purchase Agreement (the "Master Agreement," attached as Ex. 1).  The term of the Master Agreement is from January 1, 2022, through December 31, 2023.  (*Id*. at ¶ 6.)[1]

10.      Under the Master Agreement, CK Brands was representing and acting on behalf and for the benefit of certain "Affiliated Companies," which were defined in the Master Agreement to include CK Stores and others, and all of which were collectively defined as "Customer" or "Customers" along with CK Brands under the Master Agreement.  (Ex. 1 at 2 & ¶ 1.5.)  Pursuant to Section 1.5 of the Master Agreement, CK Stores and many other affiliated Circle K entities are third-party beneficiaries of the Master Agreement.

11.      The Master Agreement expressly recognized that the Customers' United States network is comprised primarily of corporate stores under the "Circle K" and

---

[1] The Master Agreement is governed and construed in accordance with the laws of the State of Arizona, and it provides that the Parties "consent and shall not be permitted to object" to venue and jurisdiction in Arizona state and federal courts.  (Ex. 1 at ¶ 11.8.)

other brand names as well as franchise stores operating under various brands, all of which are in multiple states of the United States, including Arizona, and are divided into business units.  (*Id*. at 2.)

12.   The Master Agreement required Goli to sell to the Customers, and required the Customers to buy, the products listed on Schedule A to the Master Agreement.  (*Id*. at ¶ 1.1; *see also id*. at 16–17 (Schedule A).)

13.   In turn, in Schedule A of the Master Agreement, Goli guaranteed the Customers a "minimum velocity" of sales of four Goli products (the "Guaranteed Obligation").  (*Id*. at 16.)  The four Goli products listed on Schedule A are: (1) UPC #055840401951 (Goli's Apple Cider Vinegar Supplement), UPC #055840401975 (Goli's Ashwagandha Supplement), UPC #055840401999 (Goli's "Superfruits" Supplement), and UPC #055840402019 (Goli's "Supergreens" Supplement).  (*Id*.)

14.   More specifically, Schedule A to the Master Agreement states that each Circle K Business Unit was expected to average $27.50 per SKU per week within the "Territory," which was defined in the Master Agreement to be the United States.  (*Id*.; *see also id*. at 2.)

15.   Schedule A also states that if the Guaranteed Obligation is not met, Goli will pay each Circle K business unit "on N30 terms representing fifty-two percent (52%) of the difference of A) the sum of the Guaranteed Obligations amount per SKU, for all applicable SKUs and B) the sum of the average per-SKU sale amount for all SKUs, based on the number of SKUs sold, for a period of thirteen (13) weeks."  (*Id*. at 16.)

4

16.    In other words, if the promised minimum velocity was not met under the Guaranteed Obligation, Goli was contractually required to pay the Customers a 52% margin on the difference between actual sales and the guaranteed number of sales according to the formula detailed in Schedule A to the Master Agreement.

17.    The Master Agreement separately requires Goli to "maintain an inventory and service level of Products at all times which will meet [the Customers'] need for Products based on [their] historical purchases and such other forecasts as [they] may from time to time provide to [Goli]."  (*Id*. at ¶ 1.2; *see also id*. at 19 (Schedule C, ¶ b) ("Supplier is required to provide Customer with fresh, in-date products.").)  Goli's failure to keep its Customers' inventory in stock results "in penalties to be paid by [Goli] including without limitation lost profits (including any applicable rebates) and business interruption delays and associated costs."  (*Id*. at ¶ 1.2.)

18.    ***Second***, the Parties separately entered a Queue Line and/or Checkout Counter Placement Agreement (the "Placement Agreement," attached as Ex. 2.)  The Placement Agreement terminates upon expiration or termination of the Master Agreement.  (*Id*. at ¶ 3.)

19.    In the Placement Agreement, Goli stated its desire to place their products for sale in a new product space at Plaintiffs' convenience stores called "the Queue Line or Checkout Counter," and accordingly, Goli agreed to pay "$12.50 per sku per store per 6 months" for placement of its products in that area.  (*Id*. at ¶ B & 2 (Schedule A).)

20.    The Placement Agreement otherwise ratified and reaffirmed the Master Agreement and stated that all the terms and provisions of the Master Agreement remained in full force and effect.  (*Id*. at ¶ 4.)

21.    Following the execution of the Master Agreement, Plaintiffs placed the products that they bought from Goli, and Goli supplied to Plaintiffs, for sale in their convenience stores, and Plaintiffs otherwise performed all Customer obligations set forth in the Master Agreement.

22.    However, Goli failed to meet the Guaranteed Obligation in the third quarter of 2022 (July 13, 2022–September 30, 2022); the fourth quarter of 2022 (October 1, 2022–December 31, 2022); and the first quarter of 2023 (January 1, 2023–March 31, 2023).  Goli also failed to meet the Guaranteed Obligation in the second quarter of 2023 (April 1, 2023–June 30, 2023), and Circle K will soon be issuing its invoice to Goli for the amounts owed under the Guaranteed Obligation in the Master Agreement for Quarter Two of 2023.

23.    Moreover, following its failure to meet the Guaranteed Obligation in three consecutive quarters (which is now really four consecutive quarters when adding in Quarter Two of 2023), Goli failed to perform its contractual obligation to pay the Customers a 52% margin on the difference between actual sales and the guaranteed number of sales according to the formula detailed in Schedule A to the Master Agreement.

24.    Further, following the execution of the Placement Agreement, Goli failed to make the required payments of $12.50 per SKU per store every six months,

despite Plaintiffs placing Goli's products in the Queue Line or Checkout Counter area of their convenience stores as they were required to do under the Placement Agreement.

25.     Plaintiffs sent invoices to Goli for the amounts due and owing on January 3, 2023, January 20, 2023, and April 27, 2023, but Goli has not provided any payment, which is a violation of the Parties' contracts.

26.     On March 9, 2023, Plaintiffs, through counsel, sent Goli a written notice that it was in default of the Master Agreement because Goli had failed to perform its material obligation—that is, the Guaranteed Obligation—under the Master Agreement and requesting that Goli cure its default within 30 calendar days.  (*See* Ex. 1 at ¶ 7(a) ("For purposes of this Agreement, a Party is in 'Default' if such Party . . . fails to perform any material obligation under this Agreement . . . In the event a Default specified in (a) above has occurred, the non-defaulting Party shall send the defaulting Party a written notice identifying the Default and requesting that such Default be cured within thirty (30) calendar days.").)

27.     Plaintiffs' March 9, 2023, written notice also informed Goli of its breach of the Placement Agreement for failing to make the required payments of $12.50 per SKU per store every six months.

28.     Plaintiffs' March 9, 2023, written notice asked Goli to provide reasonable assurances within 30 calendar days that it intended to perform, and was financially capable of performing, its material Guaranteed Obligation for the remainder of the term of the Master Agreement, until December 31, 2023.  (*See* Ex. 1 at ¶ 7(b)

("For purposes of this Agreement, a Party is in 'Default' if such Party . . . fails to provide reasonable assurances of solvency upon written request by the other Party.").)

29.    Since Plaintiffs' March 9, 2023, written notice, Goli has not cured its default of the Master Agreement or the Placement Agreement.  (*Id*. at ¶ 7 (defining "cure" as meaning "complete corrective action and the payment of all undisputed fees, expenses and costs incurred by the non-defaulting Party as a result of the other Party's default").)

30.    Thus, Plaintiffs are entitled to all rights and remedies available under the Master Agreement or at law or in equity.  (*See id*.; *see also id*. at ¶ 11.6 ("In the event that a suit is brought or any attorney is retained to enforce any term of this Agreement or to collect any money due or monetary damages or equitable relief for breach, the prevailing Party is entitled to recover, in addition to all other available remedies, reimbursement for such reasonable attorney[s]' fees, court costs, costs of investigation and all other related expenses.").)

31.    For Goli's breach of its obligations under the Master Agreement, it owes Plaintiffs approximately $8.6 million so far, and for Goli's breach of the Placement Agreement, it owes Plaintiffs approximately $573,000 so far.  The total precise damages amount owed by Goli to Plaintiffs through the first quarter of 2023 is $9,172,554.48, plus interest, attorney fees, costs, and other recoverable damages. These damages will increase substantially once Circle K invoices Goli for the amounts owed to Circle K for the second quarter of 2023.

32.     Moreover, Because Goli has failed to provide reasonable assurances to Plaintiffs that it intends to comply with its contractual obligations under the Master Agreement or the Placement Agreement, Plaintiffs expect that it will incur millions more in damages before the December 31, 2023, termination of the two operable Agreements.

33.     Additionally, as of June 6, 2023, Plaintiffs calculated that $53,070.76 worth of Goli products that were for sale in Plaintiffs' retail stores have expired and thus, cannot be sold.  As of the same date, June 6, 2023, Plaintiffs calculated that an additional $1,121,019.00 worth of Goli products would not be able to be sold in Plaintiffs' retail stores due to the products' June 2023 expiration date.

34.     Goli has informed Plaintiffs that it will not replenish the inventory at Plaintiffs' retail stores with the proprietary products contemplated by Paragraph 1.2 and Schedule C of the Master Agreement, and thus, Goli has breached its requirement under the Master Agreement to always maintain a fresh, in-date inventory of products that meet Plaintiffs' needs.  Under Paragraph 1.2, Plaintiffs are entitled to damages of over a million dollars for Goli's failure to keep Plaintiffs' inventory in stock with non-expired or non-expiring products.

## FIRST CLAIM FOR RELIEF
### Breach of Contract—The Master Agreement

35.     Plaintiffs restate, re-allege, reaffirm, and incorporate all preceding paragraphs as if fully contained herein.

36.     The Master Agreement is a valid contract between Plaintiffs and Goli that has existed since it was executed as of January 1, 2022, and the term of the Master Agreement is until December 31, 2023.

37.     Goli breached the Master Agreement when, following its failure to meet the Guaranteed Obligation in the third quarter of 2022, the fourth quarter of 2022, and the first quarter of 2023, Goli failed to perform its contractual obligation to pay the Customers a 52% margin on the difference between actual sales and the guaranteed number of sales according to the formula detailed in Schedule A to the Master Agreement.  For the same reasons, Goli also breached the Master Agreement following its failure to meet the Guaranteed Obligation in the second quarter of 2023.

38.     Goli also breached the Master Agreement by failing to maintain at all times an inventory of products that meet Plaintiffs' needs, and more specifically by failing to replenish the inventory at Plaintiffs' retail stores with the fresh, in-date proprietary products contemplated by the Master Agreement.

39.     As a result of Goli's breach of the Guaranteed Obligation under the Master Agreement, Plaintiffs have been damaged so far in the amount of approximately $8.6 million, plus Plaintiffs' second quarter 2023 damages, with the total damages amount to be specifically proven at trial.

40.     As a result of Goli's breach of its obligation under the Master Agreement to maintain an inventory of non-expired or non-expiring products that meet Plaintiffs' needs, Plaintiffs have been separately damaged so far in the amount of approximately

$1.17 million due to expired product, and such damages amounts will be specifically proven at trial.

### SECOND CLAIM FOR RELIEF
**Breach of Contract—The Placement Agreement**

41.     Plaintiffs restate, re-allege, reaffirm, and incorporate all preceding paragraphs as if fully contained herein.

42.     The Placement Agreement is a valid contract between Plaintiffs and Goli that has existed since it was executed as of January 1, 2022.

43.     Goli breached the Placement Agreement by failing to make the required payments of $12.50 per SKU per store every six months, despite Plaintiffs placing Goli's products in the Queue Line or Checkout Counter area of their convenience stores as required by the Placement Agreement.

44.     As a result of Goli's breach of its obligations under the Placement Agreement, Plaintiffs have been damaged so far in the amount of approximately $573,000, to be specifically proven at trial.

### PRAYER FOR RELIEF

Plaintiffs request that judgment be entered in their favor and against Goli as follows:

A.     Compensatory damages caused and that continue to be caused by Goli's breaches of contract described in this Complaint, in an amount to be proven at trial;

B.     Legal interest, including pre- and post-judgment interest at the prevailing rate under Arizona law;

11

C.    Reasonable attorney fees, court costs, costs of investigation, and all other related expenses, as provided by Paragraph 11.6 of the Master Agreement; and

D.    Such other relief to the extent permitted by law, and as the Court deems necessary and proper.

Dated: July 18, 2023                          Respectfully submitted,

                                              **DOWD BENNETT LLP**

                                              */s/ Matthew E. Johnson*
                                              Matthew E. Johnson (*pro hac vice*)
                                              Kimberly Berve (*pro hac vice*)
                                              Email: mjohnson@dowdbennett.com
                                                        kberve@dowdbennett.com
                                              1775 Sherman St., Suite 2700
                                              Denver, CO 80203
                                              Telephone:    (303) 353-4361
                                              Facsimile:    (314) 863-2111

                                              *Attorneys for Plaintiffs*